UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>v.<br><br>RHONDA JEAN MOULDER<br><br>         Defendant. | Crim. No. 20-232(7) (JRT/BRT)<br><br>**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |

---

Harry Jacobs, Joseph H. Thompson, and Matthew S. Ebert, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Ryan M. Pacyga, **PACYGA AND ASSOCIATES PA**, 333 South Seventh Street, Suite 2850, Minneapolis, MN 55402, for defendant.

Defendant Rhonda Jean Moulder has been indicted on one count of conspiracy to commit mail fraud, one count of mail fraud, and seven counts of wire fraud, along with forty-two other defendants in an alleged nationwide fraudulent magazine sales scheme. On November 8, 2019, a search warrant was issued to search Moulder's email account which had been tied to two companies under investigation—Gulf Coast Readers and ARCO Media. On February 13, 2020, another search warrant was issued to search Moulder's business premises. Moulder filed two Motions to Suppress the evidence obtained during the execution of the warrants. The Magistrate Judge considered the motions and recommended that both be denied.

Because Moulder has raised no objection to the Magistrate Judge's recommendation as to the Business Premises Search Warrant, the Court will adopt the Magistrate Judge's recommendation and deny Moulder's Motion to Suppress Search Warrant Evidence – Business Premises.

Although the Email Search Warrant was supported by probable cause, the Court finds that it failed to comply with the Fourth Amendment's particularity requirements, was overbroad, and was therefore unconstitutional. As such, the Court will sustain Moulder's objection, reject the Magistrate Judge's conclusion on this issue and find that the Email Search Warrant was constitutionally invalid. However, because the Email Search Warrant was not facially deficient, the *Leon* good-faith exception to the exclusionary rule applies and the evidence obtained through the Email Search Warrant need not be suppressed. Thus, the Court will overrule Moulder's objection and adopt the Magistrate Judge's recommendation as to the good-faith exception, thus, Moulder's Motion to Suppress Search Warrant Evidence – Email is denied.

## BACKGROUND

### I. FACTUAL BACKGROUND

On November 8, 2019, a magistrate judge issued a federal search warrant to search the contents of Moulder's email address: rhondamoulder@gmail.com. (Resp. Mot., Ex. G ("Email Search Warrant"), Dec. 29, 2021, Docket No. 1068-7.) The Email Search Warrant was based on a 78-page affidavit by Postal Inspector John Western. (*Id.*) The affidavit

detailed a nationwide fraudulent magazine sales scheme, which involved two Florida magazine sales companies, Gulf Coast Readers and ARCO Media, ran by Moulder's two brothers David and Tony Moulder. (*Id.* ¶ 194.) Postal Inspector Western also believed that Moulder was running her own magazine sales business. (*Id.* ¶ 195.)

Chris Moulder, Tony Moulder's son, is the registered agent for Gulf Coast Readers with Anthony Moulder listed as the director/officer. (*Id.* ¶¶ 194, 196.) Anthony Moulder is both the registered agent and director/officer for ARCO Media. (*Id.*) The Better Business Bureau ("BBB") received numerous complaints about Gulf Coast Readers and ARCO Media between January 2017 and March 2019. (*Id.* ¶¶ 197–98.) The BBB records list Anthony Molder as the representative for both Gulf Coast Readers and ARCO Media and rhondamoulder@gmail.com as a contact email for both companies. (*Id.* ¶ 197.) The affidavit also included information about potentially fraudulent activity by Gulf Coast Readers as far back as 2011. (*Id.* ¶ 33.)

The Email Search Warrant sought to collect electronically stored information and therefore employed what is known as the two-step procedure set forth in Federal Rule of Criminal Procedure 41. The rule allows collection of a broader set of data from an individual's electronic database, including an email account and then permits a second search of that data by the government in order to seize a relevant subset of information permitted by the search warrant. As such, the first portion of the Email Search Warrant requested that Google provide the contents of all e-mails associated with the account, all

records or information regarding the account, types of services utilized, all information and records stored on the account, and all communications between Google and the account owner. (Email Search Warrant at 3.)

The data to then be seized by the government included (1) all the information (emails, records files, logs, or deleted but available information) that constitutes fruits, contraband, evidence and instrumentalities of violations of 18 U.S.C. § 1343 involving certain magazine subscription companies or co-defendants; (2) documents, records or communications related to certain magazine subscription companies or co-defendants; (3) records related to who created, used, or communicated with the account; (4) evidence regarding how and when the account was used; (5) emails indicating the email owner's state of mind as it relates to the crime under investigation; (6) emails that identify co-conspirators in the scheme to defraud; and (7) all emails which evidence the planning and execution of the scheme to defraud. (Email Search Warrant at 5–6.)

## II.   PROCEDURAL HISTORY

On October 20, 2020, Moulder was indicted on one count of conspiracy to commit mail fraud, one count of mail fraud, and seven counts of wire fraud, along with forty-two other defendants. (Indictment, Oct. 20, 2020, Docket No. 15.) Moulder filed two motions to suppress seeking to suppress evidence obtained through a search warrant of her business premises and a search warrant of her email address. (Mot. Suppress, Nov. 16, 2021, Docket No. 976; Mot. Suppress, Nov. 16, 2021, Docket No. 977.) The Magistrate

Judge took the motions under advisement and issued a Report and Recommendation ("R&R") recommending that both motions be denied.  (R&R, May 31, 2022, Docket No. 1204.)  Moulder has now filed objections to the Magistrate Judge's recommendation as it relates to the search warrant for her email address.  (Obj. R&R, June 14, 2022, Docket No. 1211.)[1]

## ANALYSIS

### I.  STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may "serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b).  "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections."  *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008).  For dispositive motions, the Court reviews de novo a "properly objected to" portion of an R&R.  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).  "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error."  *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

---

[1] Moulder did not file any objections to the Magistrate Judge's recommendation that the Motion to Suppress the Business Premises Search Warrant be denied.  As such, the Court adopts the Magistrate Judge's recommendation as to that motion and will deny it.

## II. DISCUSSION

Moulder raises three separate objections to the R&R. First, Moulder objects to the Magistrate Judge's conclusion that the Email Search Warrant was supported by probable cause. Second, Moulder objects to the Magistrate Judge's conclusion that the Email Search Warrant did not violate the particularity requirement of the Fourth Amendment. Lastly, Moulder objects to the Magistrate Judge's conclusion that the *Leon* good-faith exception to the exclusionary rule applies. The Court will address each objection in turn.

### A. Probable Cause

The Fourth Amendment requires that a search warrant may only be issued if it is supported by probable cause. U.S. Const. amend. IV. In determining whether probable cause exists, the search warrant must demonstrate that given all the circumstances set forth in the affidavit, there is a "fair probability" that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This requires the issuing judge to look at the totality of the circumstances. *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998).

Moulder objects to the conclusion that the totality of the information in the affidavit established a fair probability that evidence of the fraudulent magazine sales scheme would be found in the email account. While true that one of the stronger items of evidence in the affidavit is the complaints from the BBB, the affidavit also provides further information related to the criminal conduct at issue that supports a finding of

probable cause. The search warrant was supported by a 78-page affidavit that gave details on the years-long nationwide fraudulent magazine sales scheme. The affidavit also included specific information linking Moulder's email account to the nationwide scheme. Individual A, a known participant in the fraudulent magazine sales scheme, told agents that Moudler's brothers ran both Gulf Coast Readers and ARCO Media. (Email Search Warrant ¶ 194.) Individual A stated that these two companies engaged in the same type of conduct at issue in the overall investigation. (*Id.*) Individual A also informed agents that Moulder ran her own magazines sales business in Florida and received her leads and financial backing from her brother. (*Id.* ¶ 195.) Moulder's email address was listed with the BBB as the contact email for both Gulf Coast Readers and ARCO Media. (*Id.* ¶ 197.) Lastly, the affidavit stated that the BBB used the subject email to correspond with Gulf Coast Readers and ARCO Media regarding complaints that related to the criminal conduct at issue. (*Id.* ¶¶ 197–98.)

The evidence in the affidavit supporting the Email Search Warrant sufficiently described the link between Moulder's email, Gulf Coast Readers, ARCO Media and criminal conduct that has been the subject of the nationwide investigation. Based upon the totality of the evidence in the Email Search Warrant, there was a "fair probability" that evidence of the fraudulent magazine sales scheme would be found at Moulder's email address. Therefore, the Email Search Warrant was based upon sufficient probable

cause. The Court will overrule Moulder's objection and adopt the Magistrate Judge's conclusion as to this issue.

### B. Overbreadth

The Email Search Warrant used what has been called a "two-step" warrant set forth in Rule 41 of the Federal Rules of Criminal Procedure. The Rule allows a warrant to "authorize the seizure of electronic storage media or the seizure or copying of electronically stored information." Fed. R. Crim. P. 41. Further, "the warrant authorizes a later review of the media or information consistent with the warrant." *Id.* In other words, the government can request that an entire database of information be turned over to them and the government can then parse through that data in order to seize the records that are supported by probable cause.

The Email Search Warrant contained two parts, the first requested the service provider, here Google, to produce all the records, information, files, and documents associated with the subject email address. The second portion of the Email Search Warrant contained a narrower scope of documents that the government would then seize, the scope of these files pertained to the criminal activity at issue and known participants in the criminal activity. Moulder asks the Court to find that both "steps" of the Email Search Warrant were overbroad.[2]

---

[2] Moulder objects to the Magistrate Judge's conclusion regarding **particularity.** The Magistrate Judge's discussion of particularity also included an analysis of overbreadth. As the Magistrate Judge correctly noted, particularity and overbreadth are distinct. *United States v. Brown*, 2019 WL 7838276, at *11 (D. Minn. Sept. 20, 2019), *report and recommendation adopted*,

A warrant must describe the place to be searched and the persons or things to be seized. U.S. Const. amend. IV. The search is limited to that which the government has probable cause to search to "ensure[ ] that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

Rule 41 was amended to describe the "two-step" warrant to address an ever-present issue in our modern legal field—technology. As a new rule addressing a complex topic, the courts understanding, and implementation of the rule is evolving. Rule 41 undoubtedly allows law enforcement to deal with the practical realities of searching electronic records and can be a useful tool. Importantly, "two-step" search warrants are not *per se* unconstitutional, in fact, the Eighth Circuit has implicitly approved of the rule though it has not fully analyzed the implications of it. *United State v. Beckmen*, 786 F.3d 672, 680 n.6 (8th Cir. 2015).

But simply because "two-step" warrants are not *per se* unconstitutional does not excuse them from Fourth Amendment requirements. The Advisory Committee explicitly

---

2019 WL 6607240 (D. Minn. Dec. 5, 2019). Particularity is the requirement that a warrant must state what is sought clearly and breadth deals with the requirement that the scope of the warrant must be supported by probable cause. *Id.* But it is also true that the Fourth Amendment guards against the use of "general warrants," or warrants so broad they allow for a "general rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). A warrant, must therefore, include a particular description of the things to be seized. *Id.* The Court understands these concepts to be intertwined. For the Court's purposes here, it will analyze particularity and overbreadth together, noting that Moulder's main challenge to the Email Search Warrant concerns the scope of the warrant.

recognized this when it amended Rule 41 by stating that "[t]he amended rule does not address the specificity of description that the Fourth Amendment may require in a warrant for electronically stored information, leaving the application of this and other constitutional standards concerning both the seizure and the search to ongoing case law development." Fed. R. Crim. P. 41(e)(2)(B) (advisory committee's note to 2009 amendments).

The way in which the government used the "two-step" warrant here is troublesome. The Fourth Amendment's particularity requirement is meant to guard against the use of a "general warrant" which was abhorred by the colonists. *Coolidge*, 403 U.S. at 467. Items, even in the context of electronically stored information, must be described with particularity. The government described with sufficiently particularity the items to be seized in "step-two" of its warrant, Section 2 of Attachment B-33. There, the warrant confined the documents to be seized to those that related to the criminal conduct, known participants in the fraudulent magazine sales scheme, and known organizations also involved. Though "step-two" of the Email Search Warrant complies with the Fourth Amendment particularity requirements this does not fully resolve the issue. The Court must also consider "step-one" of the warrant to determine whether it also complied with the Fourth Amendment.

Whenever material is turned over to the government it is unquestionably seized within the meaning of the Fourth Amendment. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596

(1989).  In "step-one", the warrant asks Google to produce all records, files, and information associated with the Gmail account since its creation.  Once all this information is handed over to the government by Google, those files are seized for constitutional purposes.  Therefore, "step-one" of a Rule 41 search warrant must also meet constitutional requirements, such as particularity.

The Email Search Warrant's initial request for all records from Google fails the Fourth Amendment particularity requirements and is overbroad.  The government cannot ask for every piece of information related to Moulder's email account without having probable cause to access all that information.  The government did not have, nor does it argue the warrant contained, probable cause to access all the records in Moulder's email account.  To hold that such a warrant is constitutional would essentially sanction the government's use of a modern-day general warrant, granting the government access to arguably some of the most sensitive pieces of information in an individual's life.  It is hard to imagine that such a warrant would not be abhorred by our Founding Fathers.

Many other courts have expressed similar concerns over the use of Rule 41 to initially seize massive amounts of data which the government then parses through to "seize" the records supported by probable cause.  *See, e.g. In re Search of Info Assoc. with @mac.com*, 25 F. Supp. 3d 1, 6 (D.D.C. 2014) (finding overbroad a warrant for all emails and email account information over the course of three months); *In re Search Warrants for Info. Assoc. with Target Email Accts./Skype Accts.*, 2013 WL 4647554, at *8 (D. Kan.

Aug. 27, 2013) (finding overbroad a warrant similar to the one at issue here).  These courts share the concern that there is a strong possibility of abuse by the government in using warrants authorized under Rule 41.

The Court has considered whether holding that the Email Search Warrant was unconstitutionally overbroad will burden the government in its execution of search warrants going forward.  The Court does not believe it will.  Like the court found in *In re Search of Info Associates with @mac.com*, here, the government demonstrated that it could describe the records to be seized with sufficient particularity by listing the types of documents it would seize.  25 F. Supp. 3d at 6.

Further, he Email Search Warrant contained no procedural safeguards.  Certain procedural safeguards built into the warrant could have satisfied the Fourth Amendment.  The government could have required key word searches be done prior to seizure of the records, it could have segregated investigators who were performing the search from those who were conducting the investigation, or it even could have enlisted a third party to do the initial search.  The Court cannot guarantee that use of these procedural safeguards would ensure "two-step" warrants comply with the Fourth Amendment, however, their implementation would address many of the concerns the Court has raised with the Email Search Warrant.

Moulder also asks the Court to find that "step-two" of the Email Search Warrant, which discusses the information to be seized by the government, was also overbroad and

failed to meet the Fourth Amendment particularity requirements. As discussed above, this portion of the warrant was supported by probable cause and was not overbroad as to subject-matter or time. "Step-two" of the warrant narrowed the records that the government would seize to anything that involved the relevant fraudulent behavior or known participants and organizations in the nationwide fraudulent magazine sales scheme.[3] Though the affidavit did not point to evidence of emails between Moulder's email account and other participants in the scheme, the BBB complaints show that the companies associated with Moulder's account were engaged in similar criminal behavior.

The time span of the search warrant, looking for emails from the beginning of 2011 onwards, was not overbroad. Evidence showed that the company with which Moulder's email account was associated with had billed a victim fraudulent charges as early as 2011. This investigation spanned many years and across the country, understandably the warrant would be looking for information related to many different individuals and entities and over a protracted period. The breadth of "step-two" of he Email Search Warrant was mandated by the nature of the criminal conduct and as such, "step-two" of the warrant was sufficiently particular and was not overbroad.

---

[3] The Court agrees with the Magistrate Judge's conclusion that "step-two" of the Email Search Warrant was not overbroad because it included "Rhonda Moulder" in the list of relevant names. This was a scrivener's error, as represented by the government. It would make no sense to include defendant's own name in this section of the warrant. This section was included to specifically limit the records to be seized by the government. Seizing any record with Moulder's name on it would have the opposite effect, broadening rather than narrowing the scope of records.

In sum, the Email Search Warrant did not meet the particularity requirements of the Fourth Amendment and was overbroad when it required that Google produce all records associated with Moulder's email account.  The government could have, and was in fact able to, describe with sufficient particularity the records it sought and did so in "step-two" of the warrant.  Rule 41 does not allow the government to circumvent the requirements of the Fourth Amendment.  As such, the Court will sustain Moulder's objection to the R&R, reject the R&R's conclusion that the Email Search Warrant was constitutional, and hold that it was not.

### C. *Leon* Good-Faith Exception

Even though the Email Search Warrant failed to meet the Fourth Amendment particularity requirement, the evidence discovered in the search is admissible under the *Leon* good-faith exception to the exclusionary rule.  Under the *Leon* good-faith exception, evidence obtained pursuant to a warrant later determined to be invalid under the Fourth Amendment is admissible if the executing officer's reliance on the issued warrant, and belief that the warrant was valid, were reasonable.  *United States v. Leon*, 468 U.S. 897, 921–24 (1984).  The good-faith exception does not apply if (1) the judge was misled by statements the affiant knew or would have known were false; (2) the magistrate wholly abandoned their judicial role; (3) the affidavit is so lacking in indicia or probable cause as to render an officer's belief entirely unreasonable; or (4) the warrant is so facially deficient

14

that an executing officer cannot reasonably presume it to be valid. *United States v. Lindsey*, 284 F.3d 874, 878 (8th Cir. 2002).

Moulder objects to the Magistrate Judge's conclusion that the *Leon* good-faith exception applies, arguing that the fourth defect was present—the warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid. Specifically, Moulder claims that Inspector Western should have known that the Email Search Warrant was facially deficient for overbreadth.

A reasonably well-trained officer should know that general rummaging is not allowed. This may include digital rummaging. However, here the executing officers' reliance upon the Email Search Warrant was reasonable. While the Court finds that "step-one" of the Email Search Warrant requesting all records from the service provider was overbroad, this does not require a conclusion that the executing officers' did not rely upon the Email Search Warrant in good-faith.

First, the Email Search Warrant did include a narrower scope of documents to be seized by the government in "step-two." In order, then, for the good-faith exception to not apply, the executing officers would have needed to understand that, even though the Email Search Warrant contained the requisite particularity in "step-two", because "step-one" was overbroad, it was invalid. The Court cannot find that a reasonably well-trained officer would not have known this.

15

As evidenced by the analysis herein, the question of whether a "two-step" warrant under Rule 41 complies with Fourth Amendment requirements is a new and complex question currently being developed in the legal system. The Court does not expect executing officers to anticipate legal determinations or resolve ambiguities in the law. The Email Search Warrant was not so facially deficient that an executing officer could not reasonably presume it to be valid. Therefore, the good-faith exception applies and the evidence seized as a result of the Email Search Warrant should not be suppressed. The Court will overrule Moulder's objection, adopt the Magistrate Judge's recommendation on the good-faith exception, and deny Moulder's Motion to Suppress Search Warrant Evidence – Email.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES in part and SUSTAINS in part** Defendant's Objections to the Report and Recommendation [Docket No. 1211], and **ADOPTS in part and REJECTS in part** the Report and Recommendation of the Magistrate Judge [Docket No. 1206]. **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Suppress Search Warrant Evidence – Email (Docket No. 976) is **DENIED**; and

2. Defendant's Motion to Suppress Search Warrant Evidence – Arco/Gulf Coast Readers 1336 SE 47th St. Cape Coral, FL (Docket No. 977) is **DENIED**.

DATED: August 24, 2022                        _____
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                                               United States District Judge